HUBER MANUFACTURING COMPANY, Appellant, v. L. M. HUNTER et al., Respondents.

St. Louis Court of Appeals, January 29, 1901.

1. **Pleading: REPLY: NEW MATTER: COUNTERCLAIM: STATUTORY CONSTRUCTION.** When the defendant in his answer sets up new matter in a counterclaim, it is the duty of the plaintiff under section 607 and 608, Revised Statutes 1899, to make reply, if he does not confess its truth, and plaintiff is also entitled to allege in such reply any new matter set up in the answer of defendant.

2. **Written Contract: MERGER OF ANTECEDENT AGREEMENTS** In the absence of fraud or mistake, a complete written contract is a merger of all antecedent or simultaneous agreements between the parties and affords conclusive evidence of knowledge and assent on the part of the parties to all of its contents, terms and conditions.

3. **Pleading: GENERAL DENIAL: NEW MATTER: REPLY.** A general denial under the code, whether in answer to a petition or in a reply to new matter in an answer, limits the party relying upon it to the traverse of that fact which it is necessary for his adversary to prove in order to sustain his cause of action or affirmative defense.

4. ———: ———: ———: ———. In the case at bar, it was not necessary for the defendant to support the new matter set up in his answer, to prove that he subsequently made a written contract of a wholly different tenor, hence if the plaintiff wished to rely upon the effect of the latter agreement in avoidance of the answer, it was necessary for him to allege it as new matter in his reply.

5. ——: ——: NEW MATTER, WHAT IS. Any fact which avoids the action, and which the plaintiff was not bound to prove in the first instance in support of it, is new matter.

6. **Express Warranty**: SALE, RESCISSION OF: FRAUD. In the case at bar, if defendant had purchased the engine upon an *express warranty*, such warranty would have survived acceptance after a knowledge of defects constituting a breach.

7. ——: ——: ———. If, however, defendant bought without an express warranty, or fraud, on the part of the seller, then his subsequent acceptance of the thing sold, with a full knowledge of its defects, would preclude him (in the absence of any previous objection or tender of a rescission), when sued for the purchase money, to set off damages for defects in the article retained, provided the waiver or estoppel arising out of his acquiescence in the quality of the thing sold had been set up in the reply of plaintiff, the party claiming the benefit thereof.

Appeal from Knox Circuit Court.—*Hon. E. R. McKee, Judge.*

REVERSED AND REMANDED.

*J. W. Ennis* and *L. F. Cottey* for appellant.

(1) Appellant's first contention is that, the court erred in sustaining defendant's motion to strike out part of plaintiff's reply. The answer contained new matter. That part of the reply which was stricken out was not inconsistent with the petition, and constituted a defense to the new matter in the answer. R. S. 1899, sec. 607; State to use v. Williams, 48 Mo. 212; Nelson v. Wallace, 48 Mo. App. loc. cit. 197-198; State ex rel. v. Ran, 93 Mo. loc. cit. 130; Rich v. Donovan, 81 Mo. App. 184. (2) Defendant Hunter admitted that he executed the written agreement to purchase the engine which contained the warranty, and that he purchased relying on said writing. The court should have sustained appellant's objection to the oral testimony of Hunter in regard to the purchase

of said engine.    It is a general and well-established rule that
parol evidence of a prior or contemporaneous agreement can
not be received to vary, add to, or take from an original con-
tract in writing.    Newman v. Bank, 70 Mo. App. loc. cit. 141;
Kingman v. Schulenberger, 64 Mo. App. loc. cit. 557; State
ex rel. v. Jones, 131 Mo. loc. cit. 205; Miller v. E. L. & P. Co.,
133 Mo. loc. cit. 220; Tracy v. Union Iron Works, 104 Mo.
loc. cit. 198, 199.

   *O. D. Jones* and *H. T. Botts* for respondent.

   (1)  The case Rich v. Donovan, 81 Mo. App. 184 so con-
fidently cited and quoted, has no application to this case.
The "special warranty" clause, if left in the reply, laid no
foundation for evidence, or if in evidence, did not tend to show
that plaintiff did not deliver an old engine to defendant.    Ap-
pellant quotes opinion in Water & Light Co. v. Lamar, 140
Mo. 157, apparently with great confidence.    And the very
language quoted, "that when an article is furnished pursuant
to contract, requiring it to be of a certain quality," then the
rule of that case applies, shows it does not apply.    He begs
the whole question.    It is here, whether the engine furnished
was the one "contracted" for, and that is the sole question in
issue and on trial.    If he prevailed on that, he needed no reply
much less the special warranty clause to get judgment.    This
disposes, we think, of all appellant's objections and assign-
ments.    More are itemized on the record, but they are included
in these.    He does not assign even that the verdict is against
the weight of the evidence for the obvious reason it was a hope-
less task.    He says instruction 1 given defendant does not
submit the question of fraud to the jury; and cites authorities
to show the instructions should be as broad and no broader than
the facts stated in the pleadings.    (2)  Plaintiff's attorney

seems to have the idea that because the word "fraud" is not used in the instruction, it does not submit that question.    The allegation that a party fraudulently did an act, if the act itself does not show it, does not aver it; the allegations of it in a pleading and the proof of it on the trial, is by "facts constituting the fraud."    A pleading and the evidence "must show in what the fraud consists and how it has been affected."    8 Am. and Eng. Ency. of Law, 653.    "The use of epithets, however bountifully, will not supply the place of facts." Coldfelter v. Hulet, 137 Ind. 137.    "If the facts are stated (to constitute fraud) the legal conclusion follows as night follows day, and so no statement of what conclusion the law draws is necessary."    Hoester v. Sammelman, 101 Mo. 619. It is not complained that all "the facts constituting the fraud" are not predicated in the instruction, but that the word "fraud" is not used.    The objection is untenable.

BOND, J.—This suit is for judgment for the balance due on a note and for foreclosure of a mortgage executed by the maker to secure it.    The answer admitted the execution of the note and mortgage by defendant, and set up in avoidance that the note was given in part payment of the purchase price of an engine which plaintiff, by its agent, falsely and fraudulently represented to be a new engine and to be of the make of one whose picture was contained in the catalogue of 1896, issued by the plaintiff as a manufacturer of engines.    That in point of fact the engine in question was an old, second-hand and worn out machine and not of the pattern represented in said catalogue, and was not reasonably of the value of more than $500.    That he relied implicitly upon such misrepresentations in making the purchase and executing the note and mortgage to secure the same.    The answer concludes, to-wit: "Defendant states that he has paid on the purchase price of said

engine $655.25, by the payments set out in the petition and by delivering to plaintiff one second-hand J. I. Case engine at the agreed price of $200. And for these reasons defendant says, the consideration for the note sued on has failed in the sum and to the extent of $475 and that he is damaged by the false and fraudulent representations so as aforesaid made to him by plaintiff and its agent, and by excessive payments made and thus procured to be made on the note sued on in the sum of $100. He asks that the note and mortgage herein sued on be declared satisfied and that it be ordered cancelled on the record and that he have judgment against plaintiff for the sum of $100 and costs of suit."

The reply denied the new matter contained in the answer and further averred a written contract of sale, signed by defendant, containing a conditional express warranty that the engine which was described in said contract as *"one 16-horse-power Huber traction engine"* should be made of good material, well constructed and with proper use and management capable of doing well the work for which it was sold, and containing a further undertaking on the part of defendant, "if inside of six days from the day of its first use it shall fail in any respect to fill this warranty," to give written notice to plaintiff of such deficiencies, whereupon plaintiff should have the option to remedy the defects, if that could be done, or otherwise to furnish a new machine or to rescind the contract and restore the consideration received, with a further provision that in case defendant should fail to comply with such undertaking, the obligation of the warrantor should cease without affecting his right to recover the price of the engine. The portion of the reply alleging the foregoing new matter was stricken out by the court on the motion of defendant. Plaintiff preserved its exceptions to this ruling.

On the trial it was shown that the machine was delivered

to defendant in August, 1896, and was subsequently used and operated by him in this State and elsewhere; that it worked well and up to the date of the institution of this action (sixth of May, 1897) defendant had made payments on the note amounting to $455.25. The original sum for which the note was given was $825.

For the defendant, there was also evidence tending to show that the machine bore indications of reconstruction and age and did not have certain appliances which were a part of those constructed in the year 1896, and that defendant was told by the agent or salesman of plaintiff that he would receive a machine of the latter type, and relying upon such representations, defendant executed a written contract for the purchase of an engine described therein and agreed to give the note and mortgage in suit,. and which also embraced the conditional express warranty set forth in plaintiff's reply.

For plaintiff, there was evidence tending to prove that the machine was not a rebuilt one, but was new and fully answered the description contained in the written contract of sale and warranty. The jury brought in a verdict for defendant. From a judgment in accordance plaintiff appealed to this court and assigns for error the rulings of the trial court in striking out its reply, on the admission and exclusion of evidence, and in giving and refusing instructions.

The first complaint presents a question of pleading. The foregoing statement shows that the only defense interposed by the answer is that the defendant was induced to execute the note in suit and the mortgage securing it, solely upon the oral representations made by plaintiff's salesman that a *new* engine of the pattern of those manufactured in 1896 would be sent if defendant would sign a written contract for the purchase of "one 16-horsepower Huber traction engine" embodying therein the aforesaid conditional warranty, and that con-

trary to such agreement defendant subsequently received an old and inferior engine of a different make, for which he had already paid more than its value, and hence was entitled to a counterclaim for the overpayment. To this new matter and counterclaim it was the duty of plaintiff, under our statutes, to make reply if it did not confess its truth, and plaintiff was also entitled to allege in such reply any new matter in disproof of the new matter set up in the answer. R. S. 1899, secs. 607-608.

In pursuance of this rule of procedure, plaintiff replied by denying the allegation of fraud in the induction of the sale contained in the answer, and setting up that part or portion of the written contract of sale (under which the particular engine bought by defendant was delivered), which specified the material and method of construction of said engine, and warranted its capacity for which it was made and sold, and requiring defendant to do and perform certain things therein stipulated in order to avail himself of the benefit of this warranty. This new matter in the reply was properly pleadable in response to that stated in the answer. It is admitted in the *pleadings* of *both* parties that the machine actually bought was only described as "one 16-horsepower Huber traction engine." The theory of defendant is that he was induced to buy the article in question upon a verbal agreement with the salesman of plaintiff, that it would be altogether *new* and of the pattern of those constructed in 1896. The theory of plaintiff is that no such agreement was had with its representative and no such representation was made by him to defendant. It was competent for plaintiff to have undertaken to establish its theory in this respect, first, by calling its salesman as a witness and eliciting testimony from him to the effect that no such representations or agreements were made by him in behalf of plaintiff; second, it was competent for plaintiff to

have adduced any other evidence indirectly tending to disprove the making of such representations on its behalf. If, therefore, it was a fact that defendant, subsequent to the time of such alleged oral contract between himself and plaintiff's salesman, executed a complete written agreement embracing all the terms of the purchase of the machine, and describing specifically its material, its method of construction and adaptation for use, and defining the extent of his right to redress in case of any defects in such machine, it is clear plaintiff would be entitled to the evidential force of such written contract as tending to disprove prior or contemporaneous verbal agreements or representations claimed to have been had between defendant and the agent of plaintiff. That such a contract would possess evidential potency, results from the elementary rules of law that, in the absence of fraud or mistake, a complete written contract is a merger of all antecedent or simultaneous agreements between the parties and affords conclusive evidence of knowledge and assent on the part of the parties to all of its contents, terms and conditions. Kellerman v. Railroad, 136 Mo. loc. cit. 188 and cases cited. Prima facie, therefore, the contract for the sale of the machine with its mutual stipulations of warranty and notice of defects, evidenced a valid and binding agreement conclusive upon the parties. It was, however, attacked by defendant in his answer for fraud in its procurement. Upon the issue thus raised the plaintiff, who claimed under the contract, was entitled to whatever probative force its terms and provisions might afford in negation of the fraud alleged in its procurement. Now, in the case at bar, the description of the article sold, contained in the contract and also the specifications therein of the material and method of construction of the engine, do not sustain or coincide with the allegations in the answer of an agreement between the parties that the engine should be *altogther new*

and of a particular pattern. On the contrary, the stipulation of the contract merely described the horse-power of the engine and provided that it should be of *good material well constructed* and *adapted to the use* for which it was made and sold. This language excludes the idea that there was any specific agreement that it should be, not entirely *new*, but that it should be built after a *particular pattern* exhibited among the designs of engines offered for sale in 1896. In other words, the defendant admits he bought an engine of the exact horse-power described in the contract, but he claims that plaintiff's agent promised him it should have the superadded qualifications of newness and conformity to a particular picture shown in a catalogue. To disprove this contention the seller replies, in effect: "But you (defendant) subsequently signed a written contract which described the thing you bought and defined its material and method of construction and which *wholly omits* the superadded conditions which you claim under a previous oral agreement with our agent." It is thus apparent that the prima facie force of such written contract *does* tend to avoid the contention that the engine was to be of the peculiar make represented in the previous oral agreement claimed with plaintiff's agent, because even if such agreement was had, it was subsequently abandoned, when omitted from the final written agreement containing a distinct and different description and definition of the machine and the method of its construction. It follows that the written contract in all its parts was receivable in evidence in indirect disproof of the issue of fraud tendered by the new matter in the answer. This issue was injected in the case by the answer attacking the consideration of the note and mortgage upon the ground that the *original contract* which provided for them was induced by fraud thus making the validity of that contract the decisive question in the case. Under these circumstances it is not perceivable how

plaintiff could be denied the right to rely on the evidential quality of the contract thus assailed, since it was in writing, signed by defendant and tended by its entire terms and provisions to show an agreement of the parties free from the particular grounds of impeachment affirmatively pleaded in the answer.

Again, if the written contract had been set forth in the petition as the basis of the note and mortgage given in furtherance of its purpose, its relevancy and admissibility in·evidence upon the issue of fraud in its obtention pleaded in the answer, would be too plain for discussion. The only difference between the case supposed and the one under review is, that here the contract not being necessary to the statement of the cause of action in the petition, was omitted therefrom, but being brought into the case by an answer alleging it to be the basis of the suit and resting upon fraud, the plaintiff thereupon denied the fraud and affirmed the validity of the contract and sought its enforcement as the final agreement of the parties. Unless it had been thus pleaded as new matter in the reply, it would not have been admissible in defense of the new matter set up in the answer and counterclaim, which being based solely on an alleged prior oral agreement, could only have been directly denied by contradictory testimony of the other party (plaintiff's agent) to the alleged representations. The subsequent written contract did not, of itself, show that no such prior representations had been made, but it did tend to prove that, irrespective of the fact of such prior representations, the defendant had finally agreed in a writing, which covered the subject and which entirely ignored all of the previous alleged representations or agreements made with him by plaintiff's salesman. The pleader, therefore, correctly alleged this final written agreement in his reply as a special and affirmative defense to the new matter contained in the

answer and in so doing he only exercised the right given him by the statute (R. S. 1899, sec. 607), and the decisions in this State distinguishing the scope of the issues raised by a general denial under the practice act from those created by the general issues at common law. On this point the doctrine is thus expressed by our Supreme Court: "Under the old system, by pleading the general issue, everything was open to proof which went to show a valid defense. But the practice act, which has substituted for the general issue an answer, and requires a statement of any new matter constituting a defense, in addition to a special denial of the material allegations of the petition intended to be controverted, has worked a complete and total change in the principles of pleading. The defendant, by merely answering the allegations in the plaintiff's petition, can try only such questions of fact as are necessary to sustain the plaintiff's case. If he intends to rely upon new matter which goes to defeat or avoid the plaintiff's action, he must set forth in clear and precise terms each substantive fact intended to be so relied on." Northrup v. Miss. Valley Ins. Co., 47 Mo. 444. As to the new matter alleged in the answer as a defense on the basis of a counterclaim, the defendant occupied the status of a plaintiff and the plaintiff the status of a defendant. Had the plaintiff, therefore, only filed a general denial in his reply, no issues would have been joined as to the execution of the subsequent written contract, for proof of that would not have been necessary to sustain the allegation of new matter in the answer. A general denial under the code, whether in an answer to a petition or in a reply to new matter in an answer, limits the party relying upon it to the traverse of those facts which it is necessary for his adversary to prove in order to sustain his cause of action or affirmative defense. Obviously, it was not necessary for the defendant in this action to support the new matter set up in his answer to prove that

he subsequently made a written contract of a wholly different tenor. Hence if the plaintiff wished to rely upon the effect of the latter agreement in avoidance of the answer, it was necessary for him to allege it as new matter in his reply. As to this the Supreme Court has said: "The general rule on this subject is that any fact which avoids the action, and which the plaintiff was not bound to prove in the first instance in support of it, is new matter." State to use v. Williams, 48 Mo. loc. cit. 212; affirmed Nelson v. Wallace, 48 Mo. App. loc. cit. 198, and cases cited. The assignment of error for striking out the plaintiff's reply is well taken.

I. The exclusion of a part of the written contract signed by defendant for the purchase of an engine and providing for the note and mortgage in suit, is likewise error. When this contract was signed by defendant, it became the measure of his right and duty as to the matters embraced therein so far as it expressed a full and complete agreement, unless it was procured by fraud, or mistake. If not incomplete or voidable for fraud, it would entitle plaintiff, under the facts of this record, to judgment on the note and foreclosure of the mortgage.

II. Appellant also insists that since defendant *admits* that he discovered in November, 1896, that the engine sent to him under his contract was a second-hand or rebuilt engine, and that with knowledge of this fact he voluntarily thereafter, to-wit, on the twenty-ninth of December, 1896, paid $200 of the purchase money, and on the twenty-fourth of February, 1897, $140.25, and on the sixteenth of April, 1897, $75, without objection to the quality or kind of engine sent to him, that he must be deemed to have waived, or to be estopped from, any right, when subsequently sued for the purchase price, to diminish the recovery on the ground of such inferiority on the part of the engine as would have entitled him to a *timely* rescission of the contract for fraud. The rule is well settled that if

defendant had purchased the engine upon an *express warranty,* such a warranty would have survived acceptance after a knowledge of defects constituting a breach; for the defendant would still have the covenant of the warrantor upon which to rely. If, however, defendant bought without an express warranty, or fraud, on the part of the seller, then his subsequent acceptance of the thing sold, with a full knowledge of its defects, would preclude him (in the absence of any previous objection or tender of a rescission) when sued for the purchase money, to set off damages for defects in the article retained, provided, the waiver or estoppel arising out of his acquiescence in the quality of the thing sold had been set up in the reply of the party claiming the benefit thereof. Water & Light Co. v. City of Lamar, 140 Mo. loc. cit. 157; Beach on Modern Law of Contracts, sec. 419. In the case at bar, the plaintiff did not aver in his reply any such waiver or estoppel and is not, therefore, in a position to invoke the rule in question, even if it had any applicability to the facts in this record.

The learned trial judge in the two instructions given for defendant, omitted to submit the issue of fraud raised by the pleadings and the evidence in this case.

The only issues which should be submitted to the jury on the next trial are: first, whether or not the contract embodied the entire agreement of the parties as to the *kind* of engine to be sold? If it did, plaintiff is entitled to judgment; second, if the contract was not completely expressed in writing, did plaintiff practice fraud on defendant by palming off on him a different engine from the one intended to be sold by the terms of the complete contract? If so, defendant is only liable for the reasonable value of the thing purchased, but if he had paid more than that, he could not recover such overpayment since it was voluntarily made. The judgment is reversed and the cause remanded to be tried in conformity with this opinion. Judge *Bland* concurs, Judge *Goode* thinks the judgment should be affirmed.